FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUN 23 1999
JAMES W McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JANE DOE, by her parents and next friends
MR. AND MRS. JOHN DOE                                            PLAINTIFF

v.                          NO. LR-C-99-386

LITTLE ROCK SCHOOL DISTRICT                                      DEFENDANT

## MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS

I.   Introduction.

Plaintiff's Complaint presents a facial challenge to LRSD's policy of randomly scanning students with a metal detector. See Complaint, ¶¶ 5-10. Plaintiff alleges that LRSD's policy as written violates the Fourth and Fourteenth Amendments to the Constitution as interpreted by the Supreme Court in Vernonia School District 47J v. Acton, 515 U.S. 646 (1995) and New Jersey v. T.L.O., 469 U.S. 325 (1985). See Complaint, ¶ 10. As those cases have been interpreted by lower courts including the Eighth Circuit, LRSD's policy of randomly scanning students with a metal detector constitutes a constitutionally valid administrative search. Accordingly, LRSD moves to dismiss Plaintiff's Complaint for failure to state a claim in accordance with Fed. R. Civ. P. 12(b)(6).

II.  The Policy.

LRSD's Administrative Directive 94-05 SS requires school principals to develop a plan for general and random scanning of students. See Complaint, ¶ 5. The policy defines a "general scan" as "the use of a metal detector to search all students who are present at school on the day of the search." See Complaint, ¶ 5. "Random scans" involve the use of a metal detector to search

"an identifiable group of students," e.g. "a bus load of students." See Complaint, ¶ 5. The policy further outlines specific procedures to be followed during both general and random scans. See Complaint, First ¶ 6. Essentially, a metal detector is passed over the student and the students' possessions, and the student must expose any object which registers on the metal detector. See Complaint, First ¶ 6. The policy provides that "once the object is located that caused the alarm and the alarm does not sound when passed over the student, the search shall stop at that point." See Complaint, First ¶ 6.

III.   Discussion.

The constitutionality of searching public school students with metal detectors was first addressed in People v. Dukes, 151 Misc.2d 295, 580 N.Y.S.2d 850 (N.Y. Crim. Ct. 1992). In that case, Dukes was arrested and charged with possession of a weapon on school property after school officials discovered a switchblade knife during a search of all students using a hand-held metal detector. Dukes argued that the search violated the Fourth Amendment and moved to suppress evidence of the knife. The court held that the search complied with the Fourth Amendment and denied the motion to suppress. Id. 151 Misc.2d at 295-96, 580 N.Y.S.2d at 850-851.

The court in Dukes first noted that the Fourth Amendment simply prohibits "unreasonable searches." Id. 151 Misc.2d at 297, 580 N.Y.S.2d at 851. It then recognized that a search of all students entering a high school constitutes an administrative search and stated:

> An administrative search is upheld as reasonable when the intrusion involved in the search is no greater than necessary to satisfy the governmental interest underlying the need for the search. In other words, in determining whether the search is reasonable, the courts balance the degree of intrusion, including the discretion given the person conducting the search, against the severity of the danger posed.

2

Id. 151 Misc.2d at 298, 580 N.Y.S.2d at 852. The court then applied this standard to the facts before it.

With regard to the intrusiveness of the search, the court looked to the procedures established for conducting the search. Like LRSD's policy, the school district's policy in Dukes included clear guidelines for school officials in conducting the search. As a result, the court concluded, "Both the guidelines and the instant search demonstrate that this search, as with most metal detector searches, is a minimally intrusive one." Id. 151 Misc.2d at 299, 580 N.Y.S.2d at 852. The court then turned to the governmental interest to be protected. The court stated:

> [I]t is beyond peradventure that safety in our schools, and concomitantly, preservation of an atmosphere conducive to education, are of vital importance. Weapons in schools, like terrorist bombings at airports and courthouses, are dangers which demand an appropriate response. . . . If schools cannot operate in a violence-free atmosphere, then education will suffer, a result which ultimately threatens the well-being of everyone.

Id. 151 Misc.2d at 300, 580 N.Y.S.2d at 853. Accordingly, the court concluded, "In sum, I find that the metal detector search in this case satisfies the balancing test and is reasonable." Id.

Since Dukes, two other courts have upheld administrative searches of students using metal detectors. See In the Interest of F.B., 658 A.2d 1378 (Pa. Super. Ct. 1995) and People v. Pruitt, 662 N.E.2d 540 (Ill. App. 1996). The court's opinion in Pruitt includes discussion of the Supreme Court's 1995 decision in Vernonia, supra. In Vernonia, the Supreme Court approved a school district policy for random drug testing of student athletes. In discussing Vernonia, the Pruitt court noted, "The analogy to the metal detector screening in this case is apt." Id. 662 N.E.2d at 547.

The only Eighth Circuit case involving the use of metal detectors to search public school

students is Thompson v. Carthage School District, 87 F.3d 979 (8th Cir. 1996). In that case, Ramone Lea was expelled from school after school officials found crack cocaine in his coat pocket. On the morning of the search, a school bus driver reported to the principal that there were fresh cuts on the seats of her bus. The principal initiated a search of all male students in grades six through twelve. The students were told to remove their jackets, shoes and socks, to empty their pockets and to place the contents on a table. The principal then checked the students for concealed weapons using a metal detector. The jackets were patted down and any objects in the pockets were removed. In Lea's coat pocket, the principal discovered a used book of matches, a match box and a cigarette package, all of which the principal considered contraband. In the matchbox, the principal discovered the crack cocaine. Id. at 980.

Lea argued that the search violated the Fourth Amendment because school officials "had no individualized reason to suspect Lea of carrying a weapon." Id. at 982. The Eighth Circuit quickly dismissed this argument noting that in Vernonia the Supreme Court "clarified that individualized suspicion is not always required for school searches." Id. The court stated:

> The Fourth Amendment inquiry in school search cases is whether the search was reasonable in all the circumstances. The inquiry focuses on whether the search was justified at it inception, whether its scope was reasonably related to the circumstances justifying a search, and the extent of the privacy intrusion. T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-43. In a school setting, "the relevant question is whether the search is one that a reasonable guardian or tutor might undertake." Vernonia, [515] U.S. at ___, 115 S.Ct. at 2397.

Id. Considering the facts before it in light of this standard, the Eighth Circuit concluded that the principal's decision "to undertake this generalized but minimally intrusive search for dangerous weapons was constitutionally reasonable." Id. at 983.

The most recent Eighth Circuit case concerning school searches is Miller v. Wilkes, 172

F.3d 574 (8th Cir. 1999). Like <u>Vernonia</u>, <u>Miller</u> involved a school district policy of random drug testing. However, the policy in <u>Miller</u> applied to students involved in all school activities, not just student athletes. The Eighth Circuit found no salient distinction between school activities and school athletics. More importantly, the Eighth Circuit rejected the argument that a school district must justify the policy based on a well-documented problem. The court stated:

> We see no reason that a school district should be compelled to wait until there is a demonstrable problem with substance abuse among its students before the district is constitutionally permitted to take measures that will help protect its schools against the sort of "rebellion" proven in <u>Vernonia</u>, one "fueled by alcohol and drug abuse as well as the student's [sic] misperceptions about the drug culture." <u>Acton v. Vernonia Sch. Dist. 47J</u>, 796 F.Supp. 1354, 1357 (D. Or. 1992)(subsequent history omitted), quoted in <u>Vernonia</u>, 515 U.S. at 663, 115 S.Ct. 2386. Demonstrating a drug or alcohol problem the severity of which approaches that endured by Vernonia schools certainly "would shore up an assertion of special need for a suspicionless general search program." <u>Chandler [v. Miller]</u>, [505 U.S. 305, ___], 117 S.Ct. [1295,] 1303 [(1997)]. But we conclude that, given the compelling state interest in discouraging drug and alcohol abuse, and also given the considerable risk of immediate harm once the problem surfaces, the "nature and immediacy" of the governmental concern provides strong support for the random drug testing at issue in this case.

<u>Id</u>. at 581. Thus, LRSD does not have to justify its policy with proof of an existing problem with weapons in schools. The "considerable risk of immediate harm once the problem surfaces" provides strong support for LRSD's policy of random scanning at issue in this case.

IV.   <u>Conclusion</u>.

Considering both <u>Thompson</u> and <u>Miller</u>, it is clear that the Eighth Circuit would follow the decisions in <u>Dukes</u>, <u>Interest of F.B.</u> and <u>Pruitt</u> and uphold the constitutionality of LRSD's Administrative Directive 94-05 SS. The search in <u>Thompson</u> was substantially more intrusive than a simple scanning with a metal detector. The students in that case were forced to empty the contents of their pant and coat pockets before being scanned. <u>Thompson</u>, 87 F.2d at 980. Even

5

so, the court found the search justified given the principal's reasonable belief that a weapon had been brought to school. While no specific threat is required to trigger a general or random scanning under LRSD's Administrative Directive 94-05 SS, Miller holds that a school district need not wait for an actual threat to take precautionary steps to prevent a potential harm, provided those steps are reasonable. LRSD's Administrative Directive 94-05 SS constitutes a reasonable response to the threat of violence in our public schools. As the court in Dukes concluded, " By adopting these guidelines, the Board of Education has taken a

> significant step in the battle to maintain peace and serenity in our schools. For recognizing the problem and seeking to address it in a responsible manner, the Board deserves our support and respect."
> Dukes, 151 Misc.2d at 301, 580 N.Y.S.2d at 853.   Therefore, LRSD prays that Plaintiff's Complaint be dismissed for failure to state a claim in accordance with Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

Christopher Heller
John C. Fendley, Jr.
Friday Eldredge & Clark
2000 First Commercial Bldg.
400 W. Capitol
Little Rock, AR 72201-3407

Attorneys For LRSD


By: John C. Fendley, Jr.
Bar No. 92182

## CERTIFICATE OF SERVICE

I, John C. Fendley, Jr., do hereby certify that I mailed a copy of the above foregoing on this 23rd day of June, 1999, to the following:

Patrick J. Benca
308 S. Louisiana Street
Little Rock, AR 72201

John Wesley Hall
523 West 3rd Street
Little Rock, AR 72201-2228

_____
John C. Fendley, Jr.